# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

MURPHY & GOLDSTEIN, P.C.
BY: WILLIAM P. MURPHY, ESQUIRE     ATTORNEYS FOR PLAINTIFF
I.D. #: 23339
BY: HOWARD K. GOLDSTEIN, ESQUIRE
I.D. #: 31285
1616 Walnut Street, Suite 2000
Philadelphia, PA 19103
(215) 731-1230

---

MARY DOE, an individual known to defendant,     JURY TRIAL DEMANDED

         Plaintiff
   v.
                                                                CIVIL ACTION NO.

MATCH.COM, INC.
3001 George Bush Highway, Ste. 100
Richardson, TX 75082

     and

MATCH.COM, L.P.
3001 George Bush Highway, Ste. 100
Richardson, TX 75082

         Defendants

## CIVIL ACTION COMPLAINT

1. The plaintiff is an adult individual who resides in the Commonwealth of Pennsylvania and the Eastern District of Pennsylvania.

2. She is named in the caption of this Complaint by a pseudonym for the protection of her privacy and is known to defendants.

3. Defendant, Match.com, Inc., is a corporation that is incorporated in Texas, has its principal place of business elsewhere than in Pennsylvania, and is engaged in operating

2

dockets.Justia.com

and conducting for profit an international and local Internet online dating service referred to herein as "Match.com" and/or as the "online dating service."

4. Defendant Match.com, L.P., is a Texas company related to Match.com, Inc. and headquartered in Richardson, Texas, at the address of Match.com, Inc.

5. Upon information and belief, Match.com, L.P. was at all times pertinent to this Complaint engaged in the operation of the Match.com online dating service, and, in all respects alleged by plaintiff herein, acted or omitted to act directly, jointly with Match.com Inc., as the alter ego of Match.com Inc., as the agent and servant of Match.com, Inc. conducting itself within the scope and authority of its agency, and/or as the principal or mutual co-agent of Match.com, Inc.

6. Upon information and belief, Match.com, Inc., in all respects alleged by plaintiff herein, acted or omitted to act directly, jointly with Match.com, L.P., as the alter ego of Match.com, L.P., as the agent and servant of Match.com, L.P. conducting itself within the scope and authority of its agency, and/or as the principal or mutual co-agent of Match.com, L.P.

7. Plaintiff became a paying subscriber of the Match.com online dating service in March 2003 in order to be anonymously profiled on defendant's Internet web site as a woman from Philadelphia in search of prospective dating partners who may be interested in a prospective dating connection to Philadelphia.

8. Jurisdiction is based on diversity jurisdiction 42 U.S.C. § 1332, the amount in controversy being in excess of $75,000.00, exclusive of interest and costs.

9. The present action sounds in both tort and contract and arises out of transactions and occurrences, including publication to and receipt by plaintiff of the below-mentioned e-

mails at her home, within the Eastern District of Pennsylvania.

<u>The Match.com, Online Dating Service Subscribed to by Plaintiff</u>

10.  Notwithstanding the alleged involvement and/or interaction of Match.com, Inc. and Match.com, L.P., plaintiff reasonably believed at the time she subscribed to the Match.com online dating service and at the time of the injuries alleged below occurred, that she was dealing with one cohesive Match.com enterprise.

11.  As part of the national online dating service, defendants at all times pertinent to this Complaint obtained personal information from their paying subscribers which they understood and declared would be keep private and secure.

12.  As part of the service operation, defendants caused the personal profiles of paying subscribers, including plaintiff, to be organized and arranged according to the geographic location which the subscriber selected.

13.  Defendants made that information available by publishing it on the Internet at a web site "www.match.com" as an advertisement to, and/or notice designed to attract, other subscribers and the general public to consider dating opportunities with an individual subscriber.

14.  Defendants also offered as part of its service to subscribers, including plaintiff, an electronic method by which interested responders anywhere on the globe may communicate with a subscriber even though the anonymity of the subscriber is preserved.

15.  This system preserves the control of the subscriber over that subscriber's anonymity.

16. Of course, the geographical identification of the profiled subscriber targets the subscriber's published profile principally to persons who reside or expect to be present in

the same location (either as subscribers, prospective subscribers or the general public) and who access the web site looking for a possible dating partner.

17. Defendants invited the general public and other subscribers to view the profiles of subscribers who are displayed as prospective dating partners from a designated location.

18. In addition to geographic location, defendants at all times pertinent to this Complaint also organized the online dating service data according to the gender preferences of the subscribers, creating heterosexual, male homosexual and/or lesbian categories.

19. At all times pertinent, defendants conducted business in Philadelphia, Pennsylvania, having numerous paying subscribers in Philadelphia whose pictures and/or information appeared for inspection by persons interested in prospective dating partners from Philadelphia.

20. On or about March 6, 2003, plaintiff subscribed to and paid for the Match.com service in material reliance upon the expressed and implied assurances of defendants that she would maintain control over her personal privacy and private information and that all personal and private information in defendants' possession, except as included with plaintiff's permission in a displayed profile, would remain completely secure and private.

21. In the process of subscribing, plaintiff was required to and did supply private data, including her name, age, address, phone number, phone, e-mail address, and credit card information, as well as other personal information.

22. She also developed a pseudonym for online publication purposes so as to preserve her privacy and anonymity and her complete control over her privacy and

anonymity.

23. The assurance and promise by defendants of the privacy of the plaintiff's personal and identifying information, apart from what was agreed by her to be part of a for-publication profile, was of utmost concern to plaintiff in undertaking to obtain defendants' service and a material factor in her willingness to subscribe, as the gender-preference category in which she was presented would otherwise subject her to possible scorn, ridicule, humiliation, hatred, harassment and/or other retaliation, physical and otherwise, from persons antagonistic to women dating women.

24. Plaintiff specifically designated Philadelphia as her advertised dating location and elected to be included in a category consisting of women who seek women as their prospective dating preference.

25. Defendants agreed and promised to make public only such information as plaintiff approved so as not to inform any stranger or person who might otherwise wish to do her harm or injury and thereby target and victimize her.

26. Plaintiff was assured and promised by defendants, and it was mutually agreed and understood, that anyone who sought to make contact with her after reviewing the online information could only do so through an e-mail address which defendants provided and regulated, and plaintiff and her identity would be insulated her from the contacting person, subject to plaintiff's own personal choice and decision to reveal more information or have direct contact.

27. Plaintiff was assured and promised by defendants, and it was mutually agreed and understood, that defendants would keep her identity and personal information completely private.

28. These promises were material and created a mutual understanding and agreement by which plaintiff could have anonymous communication with a prospective dating partner if she wished for the purpose of screening such individuals and for making a personal determination whether and on what terms she wished to meet such individual.

29. Defendants at all times pertinent knew and/or reasonably should have known that plaintiff's same-gender dating preference could result in social scorn, ridicule, humiliation, hatred, harassment and/or other retaliation including actual or feared physical violence, in the event plaintiff's identifying information was not kept completely private by defendant.

### Defendants' Conduct

30. On or about March 17, 2003, defendants, by their agents, servants and employees, acting within the course and scope of their employment, allowed access to and use of plaintiff's private information, and caused plaintiff to receive and be subjected to highly offensive, indecent, lascivious and outrageous e-mails ridiculing, degrading and victimizing her because of her gender preference.

31. One e-mail, with the subject "HI," stated "Hey would please let me eat out????? I promise to make you cummmmm!!!!!" (A true copy of the contents of this e-mail is attached hereto as Exhibit A as "Forwarded Message" sent by plaintiff to defendant and is incorporated herein.)

32. Another e-mail, with the subject "HI AGAIN," stated: "Does your C - -T smell . . . . lol J/J Let me know what you think of my profile. Oh, by the way . . . . would you suck my c- - k until it cummmms?" (A true copy of the contents of this e-mail is attached hereto as Exhibit B as "Forwarded Message" sent by plaintiff to defendant and is incorporated

herein.)

33. Plaintiff reported the receipt of the e-mails to defendants and forwarded the aforesaid e-mails to Javier Carranza, an agent, servant and employee of defendants in order to have the outrageous violation of her privacy and of her contract stopped.

34. In addition to the above-referenced substantial and highly offensive e-mails, defendants, by their agents, servants and employees, allowed access to and use of private information and caused plaintiff to receive and be subjected to numerous unwanted and highly offensive, indecent, and outrageous subscriptions to sexually-oriented and/or lascivious Internet groups and associations, such as ""smutphotos," "Mature-Lesbians," "MatureWomen4YngBlkCock," etc., by falsely assuming the identity of the plaintiff in procuring the false and unwanted subscriptions. (A true copy of the contents of these e-mails is attached hereto as Exhibit C and incorporated herein; name redacted.)

35. Plaintiff also reported to defendants the subscriptions that had been obtained.

36. Plaintiff was thereafter informed that after investigation defendants had fired one, Rick Riios, a customer service employee whom defendants identified as the agent, servant and employee who had originated the aforesaid e-mails and false subscriptions at his computer.

## COUNT I (Intrusion Upon Seclusion/Privacy Claim vs. Defendants)

37. Each of the foregoing allegations is incorporated herein as if fully set forth at length.

38. Defendants brought about a relationship with plaintiff whereby she relied exclusively upon defendants to protect her privacy in performing the highly sensitive and personal dating service which defendants had advertised and for which plaintiff paid

defendants.

39. Defendants brought about that relationship and plaintiff's reliance upon the security and privacy of the information she provided, including her identity and direct access to her e-mail, by promoting for their profit a service specifically for same gender preferences between women and by providing express assurances and promises of privacy in connection therewith.

40. Defendants were at all times aware, and reasonably should have been aware, that, as a woman selecting a same gender preference, the protection of her privacy was of heightened importance to her mental, emotional and physical well being and security, and that a breach of that privacy could reasonably lead to harassment and hateful conduct directed against her and to emotional and physical harm.

41. Defendants were at all times aware, and reasonably should have been aware, that in conducting the online computer dating service with world-wide access, the consequences of a breach of privacy could be extreme and that it was necessary to maintain the privacy, anonymity and personal insulation of a subscriber to protect the well being of that subscriber.

42. Through express and implied promises and assurances, defendants created a reasonable expectation in plaintiff that plaintiff's privacy would be carefully secured against misuse and breach and made plaintiff dependent exclusively upon defendants for such protection.

43. Nevertheless, on or about March 17, 2003, defendants, through their own conduct and that of their agents, servants and employees acting within the scope and course of their employment, caused the plaintiff's right of privacy to be violated by the

substantial and highly offensive e-mails and false subscriptions, as set forth above.

44. Defendants negligently and recklessly allowed access to and use of private information by defendants' agents, servants and employees (including those designated to respond to customer telephone calls) who were not adequately and reasonably screened with regard to age, intelligence, character, education, background, qualifications and social attitudes toward females seeking same gender dating opportunities; who were not adequately compensated, trained, monitored, compartmentalized and/or supervised; and who were not electronically barred from "spoofing" or falsely assuming the identity of subscriber e-mails and using indecent language in e-mails such as was used in the e-mails to plaintiff.

45. Contrary to the representations and advertisements by which it created a reasonable expectation of security for private information of plaintiff as a subscriber, defendants allowed their agents, servants and employees freely to intrude upon plaintiff's seclusion by conducting significant and highly offensive sexually predatory and hateful activities injurious to plaintiff.

46. Defendants' conduct and that of their agents, servants and employees as aforesaid was highly offensive, shocking to the conscience, outrageous, and inconsistent with civilized behavior.

47. As a direct consequence of the false subscriptions caused by defendants, plaintiff received unwanted communications from the respective groups and/or was forced to communicate with each of the groups to remove the subscriptions.

48. As a direct consequence of the aforementioned e-mails and false subscriptions caused by defendants, plaintiff was forced, *inter alia*, to take action to change her e-mail

address, passwords, and to secure her credit.

49.  The aforementioned e-mails and false subscriptions represented and constituted an intrusion upon the seclusion of plaintiff's private concerns and a violation of plaintiff's privacy of the sort which would be considered substantial and highly offensive to a reasonable person and which were of such a nature as to cause mental suffering, shame and/or humiliation to a person of ordinary sensibilities.

50.  As a direct consequence of the aforementioned e-mails and false subscriptions caused by defendants, plaintiff was placed in a state of severe emotional distress, mental suffering, humiliation, shame and terror, including fear and terror that she may be targeted for further severe scorn, ridicule, humiliation, shame, harassment, hatred, retaliation, and identity theft through the access to and proliferation of private information which had been given to defendants with the mutual material understanding and assurance that it must be kept private.

WHEREFORE,  Plaintiff respectfully demands judgment against defendants individually and/or jointly and severally, in an amount in excess of $75,000.00, exclusive of interests and costs, plus such costs, fees and expenses as the law allows, in compensatory and punitive damages.

### COUNT II (Breach of Fiduciary Duty Claim vs. Defendants)

51.  Each of the foregoing allegations is incorporated herein as if fully set forth at length.

52.  On or about March 6, 2003, defendants entered into a subscription contract, with plaintiff for the consideration of payment by plaintiff, to provide online dating services as aforesaid.

53. Defendants entered into that contractual relationship with full knowledge of plaintiff's same-gender dating preference and after having given assurances and promises of her privacy as set forth expressly and impliedly in their published privacy policy appearing on their Internet web site, and otherwise as is inherent in and implied from the nature of the service and the plaintiff's selection of a same gender preference.

54. Defendants, by agreement, assumed control over the security of the private information of the plaintiff in their hands, and plaintiff became exclusively dependent upon defendants for the protection of her privacy and security against Internet abuse and against such intrusions upon her seclusion and invasion of her privacy as in fact occurred.

55. Nevertheless, unbeknownst to plaintiff, defendants knowingly maintained a system allowing agents, servants and employees to access and use plaintiff's e-mail and send e-mails to her from within the Match.com operation, "spoofing" or falsely assuming the identity of the plaintiff and using indecent language in such e-mails, and allowing access to private information to establish memberships in Internet groups while posing as plaintiff so that plaintiff would then receive communications from such groups.

56. Plaintiff was rendered highly vulnerable to injury by virtue of having given the private information which defendants required and obtained in subscribing to defendants' service and by virtue of having elected the same-gender dating preference which defendants provided.

57. Defendants knew and/or reasonably should have foreseen that the non-private dissemination and/or improper handling of such private information could subject plaintiff to severe scorn, ridicule, humiliation, shame, harassment, hatred, retaliation, identity theft and extreme consequential personal suffering and loss.

58. The aforementioned e-mails and false subscriptions constituted a reasonably foreseeable intrusion upon the seclusion of plaintiff's private concerns and a violation of plaintiff's privacy of the sort that would be considered substantial and highly offensive to a reasonable person and which were of such a nature as to cause mental suffering, shame and/or humiliation to a person of ordinary sensibilities.

59. As a direct consequence of the aforementioned e-mails and false subscriptions caused by defendants, plaintiff was placed in a state of severe emotional distress, mental suffering, humiliation, shame and terror, including fear and terror that she may be targeted for further scorn, ridicule, humiliation, shame, harassment, hatred, retaliation, and identity theft through the access to and proliferation of private information which had been given to defendants with the mutual material understanding and assurance that it must be kept private.

WHEREFORE, Plaintiff respectfully demands judgment against defendants individually and/or jointly and severally, in an amount in excess of $75,000.00, exclusive of interests and costs, plus such costs, fees and expenses as the law allows, in compensatory and punitive damages.

### Count III (Breach of Contract Claim vs. Defendants)

60. Each of the foregoing allegations is incorporated herein as if fully set forth at length.

61. Defendants and plaintiff entered into an agreement and contract by which defendants undertook to provide online dating services to plaintiff in exchange for paid consideration by plaintiff.

62. As part of that agreement and contract, defendants agreed to show the highest

respect for her private information, as expressed and implied in defendants' privacy policy and otherwise as is inherent in and implied from the nature of the service and the selection by plaintiff of a same gender preference, and agreed further not to cause the highly offensive and significant intrusions through the e-mails and false subscriptions as are set forth above.

63.  Nevertheless, well aware of plaintiff's special vulnerability to extreme injury from a breach of her privacy in the circumstances, defendants allowed their agents, servants and employees, as aforesaid, to bring about those substantial and highly offensive intrusions.

64.  The aforementioned e-mails and false subscriptions caused by defendants constituted reasonably foreseeable events and a breach of contract which, in the circumstances presented, would reasonably foreseeably cause her to suffer severe emotional distress, mental suffering, humiliation, shame and terror, including fear and terror that she may be targeted for further severe scorn, ridicule, humiliation, shame, harassment, hatred retaliation, and identity theft through the access to and proliferation of private information which had been given to defendants.

65.  The aforementioned e-mails and false subscriptions caused by defendants represented and constituted a reasonably foreseeable violation of plaintiff's privacy of the sort which would be considered substantial and highly offensive to a reasonable person and which were of such a nature as to cause mental suffering, shame and/or humiliation to a person of ordinary sensibilities.

66.  As a direct and reasonably foreseeable consequence of the aforementioned e-mails and false subscriptions caused by defendants, plaintiff was placed in a state of

severe emotional distress, mental suffering, humiliation, shame and terror, including fear and terror that she may be targeted for further severe scorn, ridicule, humiliation, shame, harassment, hatred retaliation, and identity theft through the access to and proliferation of private information which had been given to defendants with the mutual material understanding and assurance that it had to be kept private and secure.

WHEREFORE, Plaintiff respectfully demands judgment against defendants in an amount in excess of $75,000.00, exclusive of interests and costs, plus such costs, fees and expenses as the law allows, in compensatory and punitive damages.

Respectfully submitted:
MURPHY & GOLDSTEIN, P.C.


By: _____
WILLIAM P. MURPHY, ESQUIRE
Attorney for Plaintiff