IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY DOE, AN INDIVIDUAL KNOWN TO DEFENDANTS :<br>:<br>:      Plaintiff, :<br>:<br>v.      :<br>:<br>MATCH.COM, INC. AND MATCH.COM, L.P. :<br>:<br>     Defendants :  | CIVIL ACTION<br>NO. 04-938 |

## **ORDER**

AND NOW, this _____ day of _____, 2004, upon consideration of

Defendants Match.com, Inc. and Match.com, L.P.'s Motion to Dismiss Plaintiff's Complaint and

Plaintiff's Response thereto, it is hereby ORDERED that Defendants' motion is GRANTED and

all Counts of Plaintiff's Complaint are DISMISSED with prejudice.

_____

Giles, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY DOE, AN INDIVIDUAL KNOWN TO DEFENDANTS | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 04-938 |
| | : | |
| v. | : | |
| | : | |
| MATCH.COM, INC. AND MATCH.COM, L.P. | : | |
| | : | |
| Defendants | : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Match.com, Inc. and Match.com, L.P. move this Court for an order dismissing Plaintiff Mary Doe's Complaint with prejudice for failure to state a claim upon which relief can be granted.

In support of their Motion, Defendants submit the accompanying Memorandum of Law and Exhibits.

/s/ Christopher J. Huber
Vincent V. Carissimi
Christopher J. Huber
Hadley B. Perkins
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

May 3, 2004

Attorneys for Defendants Match.com, Inc. and Match.com, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY DOE, AN INDIVIDUAL KNOWN TO DEFENDANTS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 04-938 |
| | : | |
| v. | : | |
| | : | |
| MATCH.COM, INC. AND MATCH.COM, L.P. | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Match.com, Inc. and Match.com, L.P. (collectively "Match.com")[1]

submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint for failure

to state a claim.

## I.    INTRODUCTION

Plaintiff ("Plaintiff or "Ms. Doe") has sued Match.com, alleging invasion of

privacy, breach of fiduciary duty, and breach of contract.  All three claims arise from the

identical factual allegations and are mere variations on the same theme – namely  that

Match.com failed to keep Plaintiff's information confidential pursuant to its privacy policy.  For

these claims, Plaintiff alleges no pecuniary loss, instead claiming recovery based on various

forms of emotional distress and punitive damages.  See Compl. ¶¶ 49, 50, 58, 59, 65, 66.

Each of Plaintiff's claims fails as a matter of law.  First, the damages claimed are

barred by the limitations of liability clause in the contract.  Second, the individual who allegedly

---

[1] On May 7, 2002, Match.com, Inc., a Delaware corporation, was converted into a Delaware limited partnership and renamed Match.com, L.P.  Match.com, Inc. no longer exists and therefore is an improper defendant. Nevertheless, because the Complaint fails to state a claim against either defendant for unrelated reasons, the Court need not make a determination on this point now and should dismiss the Complaint as to both defendants.

misused Ms. Doe's information was clearly not acting within the scope of his employment and so Match.com cannot be held vicariously liable for his actions. Third, because the tort claims are merely renamed breach of contract claims, they are barred by the gist of the action doctrine. Fourth, the Complaint fails to adequately allege an intrusion upon seclusion invasion of privacy claim because Plaintiff received only two unwanted emails, which is insufficient as a matter of law. Fifth, the contract between Plaintiff and Match.com did not establish a fiduciary relationship between the two parties and thus Match.com cannot have breached any fiduciary duty. Finally, Plaintiff cannot recover damages for emotional distress in a breach of contract claim.

## II.   FACTUAL BACKGROUND

Plaintiff entered into a contract with Match.com through which Match.com would provide Ms. Doe with access to its online personals and dating services. Compl. ¶ 7. A copy of this contract is provided as Attachment A.[2] The contract has a limitations of liability provision that Ms. Doe agreed to by entering into the contract. Attach. A at ¶ 11. It also incorporated by reference a privacy policy, attached as Attachment B. See Attach. A at ¶ 9.

While under contract with Match.com, Ms. Doe provided the customary information necessary to create an online profile. See Compl. ¶ 21. In providing Match.com with this information, Plaintiff designated Philadelphia as her dating location and "elected to be included in the category of women who seek women as their prospective dating preference." Compl. ¶ 24.

_____

[2] Although the contract was not attached to the Complaint, because it is referenced throughout the Complaint, it is appropriate to attach it to a motion to dismiss and this Court may consider its terms in evaluating this motion. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Even if the complaint does not explicitly refer to the document, the Court may consider any extrinsic document that is "integral" to the complaint. See Burlington Coat, 114 F.3d at 1426.

Unfortunately, as alleged in the Complaint, shortly after subscribing to Match.com, a customer service employee, Rick Riios, obtained access to Ms. Doe's information and apparently sent her two offensive emails and added her to several Internet groups and associations.  Compl. ¶¶ 31, 32, 34.  Upon being notified by Ms. Doe that someone was sending her unwanted emails, Match.com initiated an investigation and Mr. Riios was fired for his conduct.  Compl. ¶ 36.

Match.com apologized to Ms. Doe and provided her with a free year's subscription to Match.com.  Ms. Doe continued to use Match.com for several months after the incident in question.  Compl. Exh. C.

## III.    ARGUMENT

### A.    Standard of review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court should dismiss a complaint if it appears to a certainty that the plaintiff can prove no set of facts consistent with the allegations in the complaint that would entitle him or her to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In deciding a motion to dismiss, a district court must accept all well-pleaded factual averments (as well as inferences reasonably drawn from those averments) as true, and construe the complaint in a light most favorable to the plaintiff.  Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988).  At the same time, however, a court need not credit a "complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

### B.    Applicable Law

Here, the contract between Match.com and Ms. Doe contains a choice of law provision selecting California law.  Attach. A at ¶ 13.  When there is a question as to which state's laws to apply, a federal court sitting in diversity must apply the choice-of-law rules of the

forum state. LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Pennsylvania courts will typically give effect to choice-of-law provisions in contracts. Smith v. Commonwealth Nat'l Bank, 384 Pa. Super. 65, 68 (1989) (citing Aluminum Co. of Am. v. Essex Group, Inc., 499 F. Supp. 53, 59 (W.D. Pa. 1980)).

        The choice-of-law provision in the contract provides that "any dispute about or involving the Web site and/or the Service . . . shall be governed by the laws of the State of California." Attach. A at ¶13.   Similar language in other cases has been found to encompass breach of contract claims, but not tort claims. See, e.g., Am. Hearing Aid Assoc., Inc. v. GN ReSound N.A., 2004 U.S. Dist. LEXIS 4936 at *27, No. 01-5404 (E.D. Pa. 2004); Corestates Bank, N.A. v. Signet Bank, 1996 U.S. Dist. LEXIS 12673, No. 96-3199 at * 13 (E.D. Pa. 1996). Thus, the California choice-of-law provision encompasses the breach of contract claims, while Pennsylvania choice of law analysis must be used to determine which law applies to the tort claims.

        Pennsylvania uses a hybrid choice-of-law analysis. Coram Healthcare Corp. v. Aetna U.S. Healthcare, 94 F. Supp. 2d 589 (E.D. Pa. 1999). The first step is to determine whether a "true conflict" exists. A true conflict exists when the interests of one state would be impaired if the other state's law were applied. Id. at 594. The second step is a most significant contacts test, to determine which jurisdiction has the most substantial contact with the dispute.

        In this case, there does not appear to be a substantial difference between Pennsylvania and California privacy claims or breach of fiduciary duty claims. Compare Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 248 (2002) with Shulman v. Group W. Prod., Inc., 18 Cal.4th 200, 231 (1998) and compare McDermott v. Party City Corp., 11 F. Supp.2d 612, 626-67 (E.D. Pa. 1998) with Roberts v. Lomanto, 112 Cal. App. 4th 1553,

1562 (2003). Therefore, for the purposes of this motion, Match.com will rely upon Pennsylvania law to evaluate the tort claims.

### C.    Each Claim Fails As a Matter of Law.

#### 1.    The Contract's Limitation of Liability Clause Bars the Claims in the Complaint.

The contract between Match.com and Plaintiff contains a limitation of liability provision. It states:

> **Limitation on Liability.** Except in jurisdictions where such provisions are restricted, in no event will Match.com be liable to you or any third person for any indirect, consequential, exemplary, incidental, special or punitive damages, including also lost profits arising from your use of the Web site or the Service, even if Match.com has been advised of the possibility of such damages. Notwithstanding anything to the contrary contained herein, Match.com's liability to you for any cause whatsoever, and regardless of the form of the action, will at all times be limited to the amount paid, if any, by you to Match.com for the Service during the term of membership.

Attach. A at ¶11. California law dictates that this clause bars Plaintiff's claims.

California enforces limitation of liability clauses so long as the limitation of liability is not contrary to public policy. Tunkl v. Regents of the Univ. of Cal., 60 Cal. 2d 92 (1963) (interpreting Cal. Civ. Code § 1668). Tunkl outlined the characteristics weighed to determine whether a limitation of liability clause is contrary to public policy.[3] In this case, the

---

[3] The factors evaluated include whether:

(1) It concerns a business of a type generally thought suitable for public regulation. (2) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. (3) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least any member coming within certain established standards. (4) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. (5) In exercising a superior bargaining power the party confronts the public with a

(continued...)

services offered by Match.com do not raise issues of public policy.  Although Match.com

provides services to any member of the public who is willing to pay for them, online dating is

not a "practical necessity," nor is it a business generally thought suitable for public regulation.

See Tunkl, 60 Cal. 2d at 98-101; Gardner, 180 Cal. App. 3d at 717.  Match.com offers its

customers a standard contract, and requires acceptance of the contract for use of its services.  See

Attach. A.  It also provides an electronic address for any questions about the contract, which

customers are free to utilize prior to signing the contract.  Id.  As a result of the purely voluntary

nature of the service provided by Match.com, the bargaining strength of the parties has only

minimal significance, and the 'risk' the customer is subject to is negligible.  See Tunkl 60 Cal.

2d at 98-101; Gardner, 180 Cal. App. 3d at 717.

       In addition, California law provides that "a contract exempting from liability for

ordinary negligence is valid where no public interest is involved . . . and no statute expressly

prohibits it.  Limitation of liability provisions are valid in similar circumstances." Health Net of

Cal., Inc. v. Dept. of Health Servs., 113 Cal. App. 4th 224, 234 (2003).  Indeed, California courts

have enforced limitation of liability clauses in situations where the level of risk and disparity of

parties were much greater than in this case.  See, e.g., Platzer v. Mammoth Mountain Ski Area,

104 Cal. App. 4th 1253 (2002) (refusing to impose liability on a ski resort where mother of

injured minor signed a liability release); McCarn v. Pac. Bell Directory, 3 Cal. App. 4th 173

---

(continued...)

> standardized adhesion contract of exculpation, and makes no provision whereby
> a purchaser may pay additional fees and obtain protection against negligence.
> (6) Finally, as a result of the transaction, the person or property of the purchaser
> is placed under the control of the seller, subject to the risk of carelessness by the
> seller or his agents.

Gardner v. Downtown Porsche Audi, 180 Cal. App. 3d 713, 717 (1986) (quoting Tunkl).

(1992) (refusing to impose liability beyond subscription fee where phone book negligently failed to run subscriber's advertisement); H.S. Perlin Co., Inc. v. Morse Signal Devices of San Diego, 209 Cal. App. 3d 1289 (1989) (refusing to impose liability beyond service fee where building security failed and plaintiff lost $958,000 in merchandise). Thus, California law mandates enforcement of the limitation of liability claim.

Because the limitation of liability clause is valid under California law, it operates to bar Plaintiff's claims for damages under each count. It provides that "in no event will Match.com be liable to you or any third person for any indirect, consequential, exemplary, incidental, special or punitive damages." Ms. Doe requests only special damages, which are precluded by the limitation of liability clause. In a similar invasion of privacy claim, based in defamation, the California Court of Appeal defined special damages to include "value of lost time at work, medical expenses attributable to the defamation, and other economic losses in one's employment." O'Hara v. Storer Communications, Inc., 231 Cal. App. 3d 1101, 1114 (1991) (quoting Gomes v. Fried, 136 Cal. App. 3d 924, 940 (1982)). Though her damages are not specified, any compensatory damages Ms. Doe requests fall squarely in the category of special damages, those that arose as a result of mental anguish from the alleged actions of Mr. Riios. As such, they, in addition to the punitive damages requested, are precluded by the limitation of liability clause. Even if the clause does not serve to bar Plaintiff's claims in whole because her damages are not special damages, it limits her damages to the membership fees paid by her during the period in which she was a member of Match.com – a total of $24.95 a month.[4]

---

[4] Match.com already has refunded to Ms. Doe all of the membership fees she paid to Match.com.

2.    **Rick Riios Was not Acting within the Scope of His Employment and Match.com Is not Liable for His Actions.**

Plaintiff's claims are barred for an entirely separate reason, as well. They hinge on the allegations that Mr. Riios, the customer service agent who was fired as a result of his actions, was acting within the scope of his employment when he sent Plaintiff the offending emails and forwarded her information to adult content web-sites. See Complaint ¶¶ 34, 36. This runs contrary to Pennsylvania law which holds that an employer generally is not liable for the intentional torts of its employees. Fala v. Perrier Group of Am., 2000 WL 688175, *13 (E.D. Pa. May 25, 2000) (citing Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998)).

Only if the plaintiff can plead and prove that Mr. Riios was acting within the scope of his employment will the plaintiff be able to sustain a claim against Match.com. Under Pennsylvania law, Plaintiff must establish the following to succeed on the claim that Mr. Riios' alleged conduct was within the scope of his employment: "(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer . . . ." R.A. v. First Church of Christ, 748 A.2d 692, 699 (Pa. Super. Ct. 2000) (emphasis added). In addition, an employee's acts cannot be within the scope of his employment if they are done in an "outrageous or whimsical . . . manner." Potter Title & Trust Co. v. Knox, 113 A.2d 549, 551 (Pa. 1955). Pennsylvania courts "have also agreed that where an employee commits an intentional wrongful act upon another for purely personal reasons or in an outrageous manner, the employee is not acting within the scope of his employment and the employer is therefore not liable for these actions." Pokalsky v. S.E. Pa. Transp. Auth., 2002 WL 1998175, *10 (E.D. Pa. Aug. 8, 2002).

Plaintiff alleges no facts that would demonstrate that Mr. Riios was acting within the scope of his employment, instead only making conclusory allegations that "defendants, by their agents, servants and employees, acting within the course and scope of their employment." Compl. ¶ 30. Indeed, the allegations that are made by Plaintiff make clear that Mr. Riios was not acting within the scope of his employment in sending Plaintiff the unwanted emails and adding her to the unwanted websites. The Complaint alleges that Mr. Riios sent "highly offensive, indecent, lascivious and <u>outrageous</u> e-mails . . ." to plaintiff (Compl. ¶ 30 (emphasis added)) and that he "caused plaintiff to receive and be subjected to numerous unwanted and highly offensive, indecent, and <u>outrageous</u> subscriptions to sexually-oriented and/or lascivious Internet groups and associations . . . ." Compl. ¶ 34 (emphasis added). Thus, by her own allegations, plaintiff acknowledges that Mr. Riios' actions were outrageous, and thus not within the scope of his employment. <u>See</u> <u>Potter Title & Trust Co.</u>, 113 A.2d at 551 (outrageous conduct cannot be within scope of employment); <u>Brezenski v. World Truck Transfer, Inc.</u>, 755 A.2d 36, 39 (Pa. Super. Ct. 2000) ("if the act is done . . . in an outrageous manner, it is not done within the scope of employment"); <u>Pokalsky</u>, 2002 WL 1998175 at *10 (same); <u>Fala</u>, 2000 WL 688175 at *13 (same); <u>Fitzgerald v. McCutcheon</u>, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979) (same).

In a factually similar case, the Sixth Circuit determined, as a matter of law, that a customer service employee of Verizon who sent "highly offensive" emails to a customer was not acting within the scope of his employment. <u>Booker v. GTE.net LLC</u>, 350 F.3d 515, 519 (6th Cir. 2003) (affirming district court's dismissal of case on motion to dismiss under Fed. R. Civ. P. 12(b)(6)). The email in <u>Booker</u> related to a customer's complaints about Verizon's internet service and actually discussed the customer's internet service (although in an abusive way). It did not include any profanity or sexual references. In comparison, the emails here are more

offensive and have absolutely no relation to Match.com's business.  The Sixth Circuit found that the argument that the "employee's actions [in sending the offensive email] were calculated to advance the cause of Verizon . . . cannot be sustained."  Id.  Because having an employee send offensive emails was not in Match.com's interest any more than it was in Verizon's interest, Match.com cannot be vicariously liable for Mr. Riios' actions.

Therefore, Counts I and II, claims for invasion of privacy and breach of fiduciary duty, fail as a matter of law and should be dismissed.

### 3.    The Gist of the Action Doctrine Bars Plaintiff's Tort Claims

Under Pennsylvania law, the "gist of the action" doctrine precludes a plaintiff from re-casting ordinary breach of contract claims into tort claims.  Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. 2002).  See also Mercy Health Sys. of S.E. Pa. v. Metro. Partners Realty LLC, 2003 WL 21904583 (Pa. Com. Pl. July 10, 2003) (gist of the action doctrine bars claim for breach of fiduciary duty); Atchison Casting Corp. v. Deloitte & Touche, LLP, 2003 WL 1847665 (Pa. Com. Pl. Mar. 14, 2003) (same); Hammond v. Lundy, 2000 WL 804432 (E.D. Pa. June 22, 2000) (same); Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452 (M.D. Pa. 1997) (same); Bash v. Bell Tel. Co., 601 A.2d 825 (Pa. Super. 1992).  Under Pennsylvania law "to be construed as in tort . . . the wrong ascribed to defendant must be the gist of the action, the contract being collateral."  Etoll, Inc., 811 A.2d at 14.  "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus."  Id.  Thus, where a party's duty is grounded in a contract, Pennsylvania law does not recognize an independent tort claim for a breach of that duty.  Id.

The gist of the action doctrine has been stated a number of different ways – all of which preclude tort actions and bar recovery here.  The doctrine precludes tort actions:  (1) that

arise solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort essentially duplicates a breach of contract claim or the success is wholly dependent on the terms of the contract. Id. at 19 (citations omitted). The gist of the action test requires the court to determine the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of the source of the duties allegedly breached; where the duties essentially flow from an agreement between the parties, the claim is deemed contractual in nature, whereas if the duties breached were of a type imposed on members of society as a matter of social policy, the claim is deemed essentially based in tort. Hammond, 2000 WL 804432, at * 8.

Here, it is clear that Plaintiff's claims arise from the alleged breach of the contract with Match.com. Throughout the Complaint, the Plaintiff makes continuous reference to the contract and the incorporated privacy policy and each of her three claims are essentially identical. In both tort claims, the duties allegedly breached were created and grounded in the contract. See Compl. ¶¶ 27 ("it was mutually agreed and understood, that defendants would keep her identity and personal information completely private"), 52-53 ("defendants entered into a subscription contract, with plaintiff for the consideration of payment by plaintiff . . . and after having given assurances and promises of her privacy as set forth expressly and impliedly in their published privacy policy"), 54 ("Defendants, by agreement, assumed control over the security of the private information of the plaintiff . . . .").

The contract explicitly includes a privacy policy covering the information provided by the Plaintiff. Any claim for invasion of privacy is necessarily conditioned on the contract between Plaintiff and Match.com and thus is barred by the gist of the action doctrine.

See Factory Mkt., Inc. v. Schuller Int'l Inc., 987 F. Supp. 387, 395 (E.D. Pa. 1997) (tort claim barred where contract addressed issues arising in tort claim); Peoples Mortgage Co. v. Fed. Nat'l Mortgage Ass'n, 856 F. Supp. 910, 937 (E.D. Pa. 1994) ("when . . . the rights between the parties are specified by their contractual relations, courts will generally not allow a plaintiff to sue in tort") (Giles, J.).

　　　　　In addition, any fiduciary duty (and Match.com denies that one exists) arises out of the commercial relationship between Plaintiff and Match.com and that relationship was formed and governed by the contract. Where a fiduciary duty, if any, arises solely from contract, courts have not hesitated to dismiss claims of breach of that duty pursuant to the gist of the action doctrine. Mercy Health Sys. of S.E. Pa., 2003 WL 21904583, at *3 ("Pennsylvania's gist of the action doctrine bars a breach of fiduciary duty claim" that arises from a joint venture agreement); Atchison Casting Corp., 2003 WL 1847665, *3 ("alleged fiduciary duties arise out of their employment relationship, i.e. contract, . . . so that Deloitte's breach of fiduciary duty claim against them (if any) sounds in contract, not tort"); Hammond, 2000 WL 804432, at * 8 (dismissal of breach of fiduciary duty claim based on gist of the action doctrine); Ingersoll-Rand Equip. Corp., 963 F. Supp. at 454 (dismissal of breach of fiduciary duty claim based on gist of the action doctrine).[5]

　　　　　Thus, both tort claims sound in contract, not tort, and should be dismissed pursuant to the gist of the action doctrine.

---

[5] The Third Circuit's decision in Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001) does not require a different conclusion. There, the court found that the fiduciary duty was imposed by state law and "went well beyond the particular obligations contained in the Agreement itself." Id. at 105. Here, there are no fiduciary duties imposed by state law and any duties owed to the Plaintiff by Match.com arise solely as a result of their contractual relationship. Indeed, as shown by the citations in the text, courts have continued to apply the gist of the action doctrine to fiduciary duty claims even in the light of Bohler-Uddeholm Am.

**4.    The Complaint Fails to State a Claim for Invasion of Privacy**

Even assuming that Mr. Riios' actions were within the scope of his employment and that the claim is not barred by the gist of the action doctrine, the Complaint fails to state a claim for invasion of privacy. Under Pennsylvania common law, there are four separate causes of action: "(1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing a person in false light." DeAngelo v. Fortney, 515 A.2d 594, 595 (Pa. Super. Ct. 1986). Here, plaintiff asserts a claim under the first, intrusion upon seclusion. See Compl. ¶ 49. Pennsylvania has adopted the RESTATEMENT (SECOND) OF TORTS § 652B definition of intrusion upon seclusion:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

DeAngelo, 515 A.2d at 595 (quoting RESTATEMENT (SECOND) OF TORTS § 652B).

This claim requires "the physical or sensory penetration of a person's zone of seclusion in an attempt to collect private information concerning that person's affairs." Frankel v. Warwick Hotel, 881 F. Supp. 183, 188 (E.D. Pa. 1995). The only allegations of the Complaint that might meet this standard are the two emails allegedly sent by Mr. Riios to Ms. Doe. These two emails, however, do not rise to the level of an invasion of privacy as a matter of law.

Here, Plaintiff received two unwanted emails. While these emails may have been offensive to Plaintiff, they do not rise to the level necessary to support a claim for invasion of privacy. Indeed, emails are less intrusive than telephone calls, yet under Pennsylvania law, unwanted telephone calls do not rise to the level of an intrusion upon seclusion claim. See DeAngelo v. Fortney, 515 A.2d 594, 595 (Pa. Super. Ct. 1986) (telephone call and unwanted mail insufficient as a matter of law to be intrusion upon seclusion). See also RESTATEMENT

-13-

(SECOND) OF TORTS § 652B cmt. d. ("Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt."); Haller v. Phillips, 591 N.E.2d 305, 307 (Ct. App. Ohio 1990) (telephone call with abusive language insufficient as a matter of law to support claim for invasion of privacy); Bussen v. S. Cent. Bell Tel. Co., 682 F. Supp. 319, 325 (S.D. Miss. 1987) (multiple harassing telephone calls do not arise to invasion of privacy); Sofka v. Thal, 662 S.W.2d 502 (Mo. 1983) (up to eight unwanted telephone calls not actionable); Kelly v. Franco, 391 N.E.2d 54, 56 (Ct. App. Ill. 1979) (unwanted telephone calls insufficient to state a claim).

Here, the defendant did not call the plaintiff. Instead, her allegations are only comprised of email communications. As such, they are more comparable to letters than to telephone calls. This makes them even less likely to give rise to a cause of action for intrusion upon seclusion. There are numerous cases that hold that unwanted mail cannot give rise to a claim for intrusion upon seclusion. See, e.g., Hodgdon v. Mt. Mansfield Co., 624 A.2d 1122, 1162-63 (Vt. 1992) (insensitive letter not intrusion upon seclusion); Shibley v. Time, Inc., 341 N.E.2d 337, 339 (Ct. App. Ohio 1975) ("the right of privacy does not extend to the mailbox"). Thus, this Court should find that two unwanted, offensive emails are insufficient to state a claim for intrusion upon seclusion as a matter of law.[6]

---

[6] The remainder of Ms. Doe's allegations simply do not fit the elements of an intrusion upon seclusion claim. While Mr. Riios' alleged false subscriptions were inappropriate and, combined with his emails to Ms. Doe, led to his firing, they did not intrude into Ms. Doe's seclusion. Where an individual voluntarily provides information to another party, subsequent publication of that information does not constitute intrusion upon seclusion. Harris v. Easton Publ'g Co., 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984) (plaintiff "voluntarily exposed the facts" at issue, so there was no intrusion upon seclusion). Similarly, here, Ms. Doe provided Match.com with the information that Mr. Riios allegedly disseminated. While Match.com in no way condones Mr. Riios' actions, as demonstrated by his firing, they nevertheless do not give rise to a cause of action for intrusion upon seclusion.

-14-

**5.**   **Count II Fails to State a Claim for Breach of Fiduciary Duty Because There Was Not a Fiduciary Relationship between Match.com and Plaintiff**

In order to establish a fiduciary duty under Pennsylvania law, there must be a "special relationship" such as an attorney-client relationship or guardian and ward. Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc., 28 F. Supp 2d 947, 952-53 (E.D. Pa. 1998). Here, there is no such special relationship and Plaintiff has not pled such a relationship. Instead, all that she alleges is a relationship arising out of an ordinary commercial contract for services (with Match.com providing Ms. Doe with web-based dating services). This is not the sort of relationship that creates a fiduciary duty flowing from Match.com to Plaintiff.

Under Pennsylvania law, a mere commercial relationship does not create a fiduciary duty between the parties to the contract. See Elliott v. Clawson, 204 A.2d 272, 273 (Pa. 1964); Valley Forge Convention, 28 F. Supp. 2d at 952-53. See also Etoll, Inc., 811 A.2d at 23 (no fiduciary duty for commercial relationship); L&M Beverage Co. v. Guinness Import Co., 1995 WL 771113 (E.D. Pa. Dec. 29, 1995) (exclusive sales agreement did not create special relationship); Creeger Brick & Bldg Supply, Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 154 (Pa. Super. Ct. 1989) (lender and borrower did not have special relationship); Commonwealth v. E-Z-Parks, Inc., 620 A.2d 712, 717 (Pa. Cmwlth. 1993) (arms length transaction did not give rise to special relationship).

Plaintiff voluntarily entered into the contract with Match.com. The only interaction between Plaintiff and Match.com was pursuant to that contract. This simply is not enough to create a fiduciary relationship out of a commercial transaction. Under Pennsylvania law, the presumption against a fiduciary duty is not easily overcome and "a business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other." E-Z-Parks, 620 A.2d at 717 (emphasis added).

-15-

Here, there are no allegations in the Complaint that Match.com controlled any portion of Plaintiff's affairs, but rather only had access to the limited information provided by Plaintiff herself. Thus, this Court should find that there is no fiduciary duty owed by Match.com to Plaintiff and dismiss Count II.

**6.  The Breach of Contract Claim Fails as a Matter of Law Because the Damages Claimed Are Not Recoverable Under a Breach of Contract Theory**

Finally, plaintiff only claims for compensatory damages in her complaint are claims for emotional distress.  See Compl. ¶¶ 50, 59, 66.  These damages are not recoverable for breach of contract.  Under California law, "[i]t is axiomatic that such damages are not recoverable on a theory of breach of contract."  Maxwell v. Fire Ins. Exch., 70 Cal. Rptr. 2d. 866, 868 (Cal. Ct. App. 1998).  See also Navellier v. Sletten, 131 Cal. Rptr. 2d 201, 212 (Cal. Ct. App. 2003) ("damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract"); Rodriguez v. Int'l Bus. Mach., 960 F. Supp. 227, 232 (N.D. Cal. 1997) ("emotional distress and punitive damages . . . are not recoverable on a breach of contract claim"); Feldner v. Feldner, 47 Cal. Rptr. 2d 312, 318 (Cal. Ct. App. 1995) ("emotional distress damages are, fundamentally, a species of tort damages not recoverable in contract actions").

Because the only compensatory damages plaintiff claims are damages for emotional distress and such damages are barred under California law (the law that governs the contract), Count III for breach of contract should be dismissed.[7]

---

[7] In addition, California has specifically made punitive damages unavailable for a breach of contract.  See Cal. Civ. Code § 3294; Berkla v. Corel Corp., 302 F.3d 909, 917 (9th Cir. 2002) ("punitive damages . . . are not available in breach of contract actions").

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety

for failure to state a claim upon which relief can be granted.

Respectfully submitted,


/s/ Christopher J. Huber
Vincent V. Carissimi
Christopher J. Huber
Hadley B. Perkins
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendants Match.com, Inc. and
Match.com, L.P.

## CERTIFICATE OF SERVICE

I, Hadley P  Perkins, hereby certify that on May 3, 2004, a true and correct copy

of Defendants' Motion to Dismiss Plaintiff's Complaint and accompanying Memorandum of

Law was served by han   elivery and first class mail on the following:

William P. Murphy, Esq.
Murphy & Goldstein, P.C.
1616 Walnut Street
Suite 2000
Philadelphia, PA 19103

Hadley B. Perkins

Dated: May 3, 2004