IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY DOE, AN INDIVIDUAL KNOWN TO DEFENDANTS : <br><br> Plaintiff,  : <br><br> v. : <br><br> MATCH.COM, INC. AND MATCH.COM, L.P. : <br><br> Defendants : | CIVIL ACTION <br> NO. 04-938 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Match.com, Inc. and Match.com, L.P. (collectively "Match.com") submit this Reply Memorandum of Law in Support of their Motion to Dismiss the Complaint for failure to state a claim.

**I.   INTRODUCTION**

Despite its heated rhetoric, Plaintiff's Opposition Brief does not alter the substantive conclusion that her Complaint fails to state a claim upon which relief can be granted. Plaintiff frequently cites to irrelevant case law and fails to squarely address the legal arguments advanced by Match.com. Plaintiff's brief fails at the most basic level – it does not demonstrate how receiving several unwanted and offensive emails affords her any cause of action. A fair reading of the Complaint and the relevant law leads to but one conclusion – that the Complaint fails because: (a) the contract between Plaintiff and Match.com bars her damage claims; (b) the alleged unpleasant email exchange was not initiated by an employee of Defendants acting within the scope of his employment; (c) the gist of the action doctrine bars the tort claims; (d) Plaintiff cannot adequately allege an intrusion upon seclusion invasion of privacy claim; (e) there was no

fiduciary duty owed Plaintiff by Match.com; and (f) Plaintiff cannot recover damages for emotional distress in a breach of contract claim.

## II. ARGUMENT

### A. Plaintiff's Choice of Law and Contract Authentication Issues Are Spurious.

#### 1. Pennsylvania Choice of Law Rules Require the Application of California Law to the Breach of Contract Claim and the Application of Pennsylvania Law to the Tort Claims.

Plaintiff makes a show of disputing Match.com's analysis of the choice of law provision in the service contract. Opp. Br. at 6-8. Plaintiff says that defendants "concede that *Pennsylvania law* applies to all tort issues," but this is because that is what Pennsylvania choice of law dictates.[1] As amply discussed in Defendants' Motion to Dismiss, Pennsylvania courts routinely enforce choice of law provisions, unless there is a policy reason not to. See, e.g., Br. Supp. of Mot. Dismiss at 3-5 (hereinafter "Br."); Smith v. Commonwealth Nat'l Bank, 557 A.2d 775, 777 (Pa. Super. 1989) (citing Aluminum Co. of Am. v. Essex Group, Inc., 499 F. Supp. 53, 59 (W.D. Pa. 1980)). Plaintiff does not cite a single case that says differently. In fact, as support for her position that the choice of law provision should not be given effect due to a lack of contacts with California, Plaintiff cites Schifano v. Schifano, 471 A.2d 839 (Pa. Super. 1984), which is direct support for Match.com's position. In Schifano, the Pennsylvania Superior Court gave effect to a choice of law provision providing for Ohio law when both of the parties to the contract were Pennsylvania residents involved in a lawsuit in Pennsylvania. Id. at 289.

---

[1] Defendants' concession that the Eastern District of Pennsylvania is a proper forum is not, as Plaintiff suggests, "picking and choosing" what law should apply, but rather is a reflection of the fact that forum selection law and choice of law analyses are different. Forum selection clauses are governed by federal law, see 28 U.S.C. § 1404; BABN Tech. Corp. v. Bruno, 25 F. Supp. 2d 593 (E.D. Pa. 1998), while choice of law provisions are governed by the law of the forum in which the case is filed. See LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).

As explained in Match.com's Motion to Dismiss, and under Pennsylvania conflict of law rules, in the face of a choice of law provision, California law applies to the breach of contract claim and Pennsylvania law to the breach of fiduciary duty and invasion of privacy claims.

2. **Plaintiff Had a Contract with Match.com and that Contract was Attached as Exhibit A to Defendants' Brief in Support of their Motion to Dismiss.**

Plaintiff "hotly disputes" that the contract attached to Match.com's Motion to Dismiss accurately embodies the contract that existed between her and Match.com. In the Complaint, Plaintiff references a contract explicitly no less than five times. See Compl. ¶¶ 52-54, 61-62 (and the contract is mentioned numerous times obliquely, see, e.g., ¶¶ 11, 20, 23, 25-28, 39, 42). Thus, Plaintiff makes clear that a contract existed between her and Match.com, but provided none of the terms and conditions. Match.com merely provided that contract to the Court.

In a breach of contract claim, the plaintiff has the burden of proving that a contract exists and proving the terms of that contract. See, e.g., First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001) ("the elements of the cause of action are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages"); Harris v. Rudin, Richman & Appel, 74 Cal. App. 4th 299, 307 (1999) ("To state a cause of action for breach of contract, a party must plead the existence of a contract").[2] As there was no oral communication between the parties, the only means of defining

---

[2] Even if, as plaintiff seems to urge, Pennsylvania law applies, the burden remains with plaintiff to plead the existence of a contract. See McCabe v. State Farm Mut. Auto. Ins. Co., 36 F. Supp. 2d 666, 672 (E.D. Pa. 1999) ("breach of contract claim requires her to prove four elements: the existence of a contract between the parties, the essential terms of the contract . . . ."); Viso v. Werner, 369 A.2d 1185, 1187 (Pa. 1977) ("[T]he pleadings put into issue the individual liability of the appellant on the alleged contract. The burden is on the plaintiff to prove . . . the existence of the contract to which the defendant is a party").

the mutuality of their obligations is through the writing offered by Match.com embodying the terms of the parties' agreement.

Plaintiff also raises a question as to the authenticity of the contract attached to Defendants' Motion to Dismiss, yet never denies that the exhibit is an accurate copy of that which was in place when Ms. Doe signed up for the Match.com service. Instead, she dances around the fundamental issue - whether the attached contract is, in fact, the agreement upon which she relies for her Breach of Contract claim - by raising broad issues about Internet businesses and contracts. She never explains, however, how those issues affect the authenticity of the contract, and this Court need not deal with them here.

Plaintiff further complains that Match.com improperly provided this Court with a copy of the contract at issue in this action in the context of a 12(b)(6) motion. Yet, the law in the Third Circuit is clear that where a contract is referenced in a Complaint, it is proper to attach it to a Motion to Dismiss, even if it was not attached to the Complaint, and it is also proper for the Court to take note of its terms. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

    B.    **The Complaint Fails to State A Claim Against Defendants.**

        1.    **The Complaint Does Not Include a Claim for Negligent Supervision and Fails to Adequately Allege Respondeat Superior Liability.**

Nowhere in the Complaint does Plaintiff assert a claim of negligent supervision. Nonetheless, Plaintiff spends a significant amount of space in the Opposition Brief arguing that "independent liability" should be imposed on Match.com on the basis of negligent supervision. Opp. Br. at 9-12. But, respondeat superior and negligent supervision are two distinct legal theories and must be pled separately. See, e.g., Barry v. Manor Care, Inc., C.A. No. 97-5883,

1999 U.S. Dist. LEXIS 5928, *8-10 (E.D. Pa. April 29, 1999) (considering separately negligent hiring (Count I) and vicarious liability (Count II) claims); Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 419 (Pa. 1968) (noting that liability was not predicated on respondeat superior because act was outside scope of employment and separately considering negligent hiring claim).

Thus, despite Plaintiff's rhetoric, merely arguing negligent supervision is not a means to circumvent or resuscitate a legally insufficient respondeat superior claim. Indeed, R.A. v. First Church of Christ, 748 A.2d 692 (Pa. Super. 2000), on which Plaintiff heavily relies, is a case in which a direct negligence claim was filed against the First Church of Christ, the employer of the alleged tortfeasor. The court in R.A. refused to impose direct liability on the Church in addition to refusing to impose vicarious liability for the wrongdoing. Id. at 699.[3] Here, unlike R.A., Plaintiff does not allege a cause of action for negligent supervision and, therefore, this Court need not determine whether such a claim is properly pled.

Thus, as outlined in Defendants' Motion to Dismiss, Plaintiffs are left with the law that a master is not liable for the tortious behavior of his servant if the servant is acting outside the scope of his employment. See Br. at 8-10; Travelers Cas. & Sur. Co. v. Castegnaro, 772 A.2d 456 (Pa. 2001); Brezenski v. World Truck Transfer, Inc., 755 A.2d 36 (Pa. Super. 2000). The conduct of an employee is within the scope of employment for purposes of vicarious liability if, and only if, "(a) it is of the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the [employer]. . . ." Fitzgerald v. McCutcheon, 410 A.2d 1270, 1272 (Pa. Super. 1979).

---

[3] Lidwell v. Univ. Park Nursing Care Ctr., 116 F. Supp. 2d 571 (M.D. Pa. 2000), which Plaintiff also cites for support, is a Title VII hostile environment case and is inapplicable to the instant facts.

Plaintiff offers no argument to suggests that Mr. Riios sent the allegedly abusive emails or anonymously signed up a subscriber to objectionable list serves to advance the interests of Match.com. Indeed, such an argument would directly contradict the balance of the Complaint. Plaintiff alleges repeatedly that the confidentiality and trust offered by Match.com to its subscribers is integral to its business. The emails alleged to have been sent by Riios to Plaintiff were anathema to the interests of Match.com and will not ever be found to have been actuated by a purpose to serve Match.com. See Booker v. GTE.net LLC, 350 F.3d 515, 519 (6th Cir. 2003). Therefore, as a matter of law, the acts alleged in the Complaint were not within the scope of Mr. Riios' employment.

In addition, acts that are willful, excessive, or outrageous are outside the scope of employment as a matter of law. See Costa v. Roxborough Mem. Hosp., 708 A.2d 490, 495 (Pa. Super. 1998) (upholding grant of summary judgment in favor of employer where act of employee was "so willful, excessive, outrageous, and without responsibility, as to exceed his scope of employment"). Despite what Plaintiff urges, whether an act is "outrageous" or "excessive" enough to be outside the scope of employment is distinct inquiry from whether an act is "outrageous" for purposes of a punitive damages award. Pennsylvania courts have recognized this distinction, finding that "the term 'outrageous' when used in the context of vicarious liability cases . . . has a different meaning than when used with respect to punitive damages." Hannigan v. S. Klein's Dep't Store, 1 Pa. D. & C. 3d 339, 345 (1976), aff'd 371 A.2d 872 (Pa. Super. 1976). The single relevant case that Plaintiff cites as support for her argument that vicarious liability should be imposed explicitly is inapposite. In that case, the court conducted two separate and distinct inquiries: (1) whether the employee was acting within the scope of his employment; and, only after establishing that the employee was acting within the

scope of his employment, (2) whether punitive damages were appropriate. See Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1276 (3d Cir. 1979) (trial court properly found that the employee performed the tortious acts "within the scope of his employment").[4]

While often the question of whether a person was acting within the scope of employment may be an appropriate question for the fact-finder, Costa, 708 A.2d at 493, where the employee's behavior is so excessive and outrageous as to be totally without reason or responsibility, the employer is not responsible for those acts as a matter of law. Fitzgerald, 410 A.2d at 1271. Therefore, if, as Plaintiff alleges, Riios' behavior was unrelated to the service to which she subscribed and amounted to "verbal sexual assaults and harassment that ultimately preyed upon the known special vulnerability" of Plaintiff, Opp. Br. at 20, or "extreme offensiveness and severe anguish and humiliation in an outrageous series of acts that turned her confidential information into weapons," Opp. Br. at 22, that behavior can not, *as a matter of law*, be within the scope of his employment. See R.A., 748 A.2d at 700; Costa, 708 A.2d at 495. Therefore, Match.com cannot be held responsible for his actions. See O'Bryan v. KTIV Television, 868 F. Supp. 1146, 1158 (N.D. Iowa 1994), rev'd in part, on other grounds, 64 F.3d 1188 (8th Cir. 1995) (cannot find employer liable for invasion of privacy if employee was not acting within the scope of his employment); Bussen v. S. Cent. Bell Tel. Co., 682 F. Supp. 319,

---

[4] Plaintiff incorrectly cites Hoy v. Angelone, 720 A.2d 745 (Pa. 1998) as evidence of approval by the Pennsylvania Supreme Court of Chuy. Hoy was an employment discrimination case in which Chuy was cited in passing only for the proposition that egregious conduct may form a sufficient basis for a cause of action of intentional infliction of emotional distress. Hoy, 720 A.2d at 754. Similarly, Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069 (3d Cir. 1988), the New Jersey case that Plaintiff cites as support for the imposition of vicarious liability, is irrelevant. Schiavone was a defamation case, where the question was whether Time had "actual malice" as defined by New York Times v. Sullivan, 376 U.S. 254 (1964), which merely means "knowledge that [a statement] was false or [making the statement] with reckless disregard of whether it was false or not." Schiavone Constr. Co., 847 F.2d at 1076. It has nothing to do with "outrageous" acts by an employee (in Schiavone the "actual malice" claimed was knowledge that a story to be published in Time might have some incorrect information based on interviews of FBI agents).

325 (S.D. Miss. 1987) (same). Thus, the Court should grant the Motion to Dismiss because Match.com is not vicariously liable for Mr. Riios' actions as a matter of law.

### 2. The Gist of the Action Doctrine Is Good Law in Pennsylvania and It Is Appropriate to Apply the Doctrine Here.

Plaintiff's argument that the gist of the action doctrine only applies where the tort claim alleged is legally insufficient would completely vitiate the doctrine. The main thrust of Plaintiff's argument is that, because she claims to plead a cause of action in tort, the gist of the action doctrine cannot be used to confine this case to a breach of contract claim. Of course, the only time the gist of the action doctrine is used is when the tort claims in a complaint are properly pled. Otherwise, the court would simply dismiss those claims for failure to state a claim. Plaintiff's suggested approach makes a mockery of the doctrine and leads to an absurd result which is inconsistent with Pennsylvania law.

Plaintiff further attempts to argue that her claim for invasion of privacy arises outside of the contractual relationship between the parties.[5] Yet, in the portion of the brief arguing that there was an invasion of privacy, Plaintiff argues that her expectation of privacy arose from "defendants's [sic] flood of privacy assurances," Opp. Br. at 21, and that the "information was provided by her freely and trustingly to defendants, who made prolific assurances that her privacy would be honored." Opp. Br. at 2. These statements, along with the myriad of allegations in the complaint regarding the contract and privacy policy (identified above), demonstrate that the invasion of privacy claim at base is a claim for, and wholly

---

[5] Plaintiff offers no argument that the breach of fiduciary duty claim is barred by the gist of the action doctrine. Indeed, she ignores the cases cited by Match.com where Pennsylvania courts dismissed claims for breach of fiduciary duty based on the gist of the action doctrine. See Br. at 10, 12 (and cases cited therein). Plaintiff cannot argue that the breach of fiduciary duty does not arise out the contract, because her only hope for establishing any fiduciary duty is through the contract. Because the claimed breach of fiduciary duty arises out of a breach of the contract, if any, it is barred by the gist of the action doctrine and should be dismissed.

derivative of, the alleged breach of the contract between Plaintiff and Match.com. Thus, Plaintiff's invasion of privacy claim is analytically no different from a fraud claim in a breach of contract case. Pennsylvania courts repeatedly have dismissed such fraud claims as barred by the gist of the action doctrine. See, e.g., Etoll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 17-19 (Pa. Super. 2002) (collecting cases); Factory Mkt., Inc. v. Schuller Int'l Inc., 987 F. Supp. 387 (E.D. Pa. 1997).

Finally, Plaintiff does not cite a single case to support her contention the gist of the action doctrine cannot be applied to the torts in this case. In fact, the only case cited by Plaintiff in the section of her brief dealing with this doctrine that was not cited by Match.com in its initial brief is McGuire v. Shubert, 722 A.2d 1087 (Pa. Super. Ct. 1998), a case which does not even discuss the gist of the action doctrine.

### 3.    Plaintiff's Brief Fails to Show that the Complaint Adequately Alleges an Intrusion Upon Seclusion Claim

Plaintiff acknowledges that her invasion of privacy claim is based solely on a claimed intrusion upon seclusion, see Opp. Br. at 18, yet she seeks to advance a claim based in part on acts that are not actionable under that branch of the invasion of privacy family of torts. As discussed in Match.com's initial brief, under Pennsylvania common law, there are four separate causes of action for invasion of privacy, each with their own elements: "(1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing a person in false light." DeAngelo v. Fortney, 515 A.2d 594, 595 (Pa. Super. 1986). An intrusion upon seclusion claim requires "the physical or sensory penetration of a person's zone of seclusion in an attempt to collect private information concerning that person's affairs." Frankel v. Warwick Hotel, 881 F. Supp. 183, 188 (E.D. Pa. 1995). Thus, intrusion by the defendant is a fundamental requirement in an intrusion upon seclusion claim.

The only allegations in the complaint that are intrusions by Defendants[6] into Plaintiff's seclusion are the two emails allegedly sent by Mr. Riios to Plaintiff's email address. As discussed in Match.com's initial brief, these acts are insufficient as a matter of law to be considered an actionable intrusion. See also Bussen, 682 F. Supp. at 325 (multiple unwanted calls insufficient for an invasion of privacy claim).

The other allegations, that Mr. Riios improperly signed Plaintiff up for several Yahoo news groups, do not allege any intrusion by Match.com into Plaintiff's seclusion. Match.com had rightful access to that information (which was voluntarily provided by Plaintiff), and as such, use (or misuse) of that information was not an invasion of privacy. See, e.g., DeAngelo, 515 A.2d at 131 (information provided by plaintiff to defendant that was subsequently provided to third party did not amount to invasion of privacy); Dwyer v. Am. Express Co., 652 N.E.2d 1351, 1354-55 (Ill. App. Ct. 1995) (dismissing case because the court found that "[it] cannot hold that a defendant has committed an unauthorized intrusion by compiling the information voluntarily given to it and then renting its compilation" to other companies without permission). Cf. Nagy v. Bell Tel. Co. of Pa., 436 A.2d 701, 703 (Pa. Super. 1981) (proceeding only under third prong of invasion of privacy where telephone company disclosed telephone numbers called by plaintiff). See also Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person – the system operator").

---

[6] The allegations in the Complaint only relate to Mr. Riios and not to Match.com generally.

Conceivably, such a disclosure might violate the third aspect of invasion of privacy, publicity given to a private life, but that claim was not alleged and need not be examined.[7]

The two cases cited by Plaintiff do not change the conclusion that an intrusion by the defendant is necessary for an intrusion upon seclusion claim. In both cases, the decisions do not make clear under which of the four prongs of invasion of privacy the claims are made and indeed, the courts fail to identify the elements of the claim they are evaluating and appear to combine the first and the third types of invasion of privacy. See McGuire, 722 A.2d at 1092 (disclosure an element in claim); Hall v. Harleysville Ins. Co., 896 F. Supp. 478, 484 (E.D. Pa. 1995).

In addition, in order for an intrusion to be actionable, it must "amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence." DeAngelo, 515 A.2d at 595; Bauer v. Ford Motor Credit Co., 140 F. Supp. 2d 1019, 1025 (D. Minn. 2001), vacated in part, on other grounds 149 F. Supp. 2d 1106 (D. Minn. 2001). Here, not only was the intrusion not substantial, as demonstrated in Match.com's opening brief (the allegations here are far less substantial than those in the cases cited that found no invasion of privacy), but it cannot "amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence." Plaintiff alleges receiving at most seven emails combined from Mr. Riios and the list serves, over the course of a single day. See Compl. at Exhs. A-C. Seven unwelcome emails, even offensive ones, do not amount to a "substantial burden" to Plaintiff's existence.[8]

---

[7] Here, the allegations by Plaintiff are insufficient to plead a cause of action under the third prong as well, because there was insufficient "publicity." See Nagy, 436 A.2d at 703.

[8] Indeed, after receiving the first unwanted email, plaintiff could have simply deleted those that followed without opening and reading them, thus avoiding exposure to further offensive content. Also, apparently within two days, Plaintiff had changed her user name and avoided any additional unwanted emails or solicitations. See Compl. Exh. C.

Notwithstanding Plaintiff's claims that the complaint "duly alleges extreme offensiveness and severe anguish and humiliation in an outrageous series of acts that turned [Plaintiff's] confidential information into weapons that were used against her solitude and seclusion," Plaintiff continued to use Match.com for several months after she received the unwanted messages. While Plaintiff may have found the emails unpleasant and unwanted, they do not arise to the level of an invasion of privacy.

### 4.   A Commercial Contract Does Not Create A Special Relationship Which Gives Rise to A Fiduciary Duty

It is black letter law that an ordinary contract does not give rise to a fiduciary relationship. Elliott v. Clawson, 204 A.2d 272, 273 (Pa. 1964); Commonwealth v. E-Z Parks, Inc., 620 A.2d 712, 717 (Pa. Cmwlth. 1993) (arms length transaction did not give rise to special relationship). Plaintiff does not dispute this.

Instead, Plaintiff argues that this particular commercial relationship is different from all others and creates a "special duty" on behalf of Match.com. Plaintiff does not cite any authority that would suggest that this commercial relationship should be distinguished, instead relying on an off-hand reference to the military's "don't ask, don't tell" policy, a completely irrelevant issue. Not only does Plaintiff fail to cite a case showing how this commercial relationship creates the special duty, Plaintiff fails to cite any case where a commercial relationship was transformed into a fiduciary relationship. The only case Plaintiff cites is Etoll, a case which found no fiduciary relationship. Etoll, Inc., 811 A.2d at 23 (no fiduciary duty for commercial relationship). Plaintiff has failed to properly allege a fiduciary duty and her breach of fiduciary duty claim should be dismissed.

5.  **Plaintiff Ignores the Law that Holds Damages for Emotional Distress Are Not Recoverable Under a Breach of Contract Theory**

Plaintiff does not dispute that California law bars recovery of damages for emotional distress and punitive damages in a breach of contract claim. Thus, if California law applies to the breach of contract claim, Plaintiff's claims for damages are barred.[9]

---

[9] Even if this Court concludes that Pennsylvania law applies, Plaintiff's claims for damages for emotional distress and punitive damages are barred in a breach of contract claim, because the general rule in Pennsylvania is that "a plaintiff may not ordinarily recover emotional distress damages arising from a breach of contract." Novick v. UnumProvident Corp., 2001 WL 793277, *2 (E.D. Pa. July 10, 2001). See also Factory Mkt., Inc., 987 F. Supp. at 400 ("Under Pennsylvania law, 'punitive damages are not recoverable in a breach of contract action.'").

While in a few extremely limited circumstances emotional distress damages may be recovered in a breach of contract claim, such circumstances are not present here. Indeed, neither case cited by Plaintiff found that emotional distress damages were recoverable. See Novick, 2001 WL 793277; Birth Ctr. v. St. Paul Cos., Inc., 787 A.2d 376 (Pa. 2001) (a claim for damages for emotional distress was not even present in this case). Emotional distress damages are only available where "the breach is of such a kind that serious emotional disturbance was a particularly likely result." Novick, 2001 WL 793277 at *1. According to Novick, this requirement is met only in exceedingly rare cases, such as "contracts of carries and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death." Id. at *1 n.3 (citing RESTATEMENT (SECOND) OF CONTRACTS § 353, cmt. a). Here, Plaintiff was seeking to meet and, apparently, date other women. Disclosure of the fact that she is a woman seeking to meet women, when that is the very basis of her subscribing to Match.com in the first place, cannot make it "particularly likely" that she would suffer serious emotional disturbance.

III.  **CONCLUSION**

For the foregoing reasons and for the reasons set forth in Match.com's initial brief, this Court should dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

Respectfully submitted,

 /s/ Christopher J. Huber
Vincent V. Carissimi
Christopher J. Huber
Hadley B. Perkins
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendants Match.com, Inc. and Match.com, L.P.

June 4, 2004

## CERTIFICATE OF SERVICE

I, Hadley B. Perkins, hereby certify that on June 4, 2004, a true and correct copy of Defendants' Reply Memorandum of Law were served by hand delivery and first class mail on the following:

>William P. Murphy, Esq.
>Murphy & Goldstein, P.C.
>1616 Walnut Street, Suite 2000
>Philadelphia, PA 19103

_____
Hadley B. Perkins